IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| KIMBERLY SCOTT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:17-cv-306-GMB |
| | ) | [wo] |
| NANCY A. BERRYHILL,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION AND ORDER**

Kimberly Scott applied for disability insurance benefits under Title II of the Social Security Act ("the Act") on September 21, 2013, alleging a disability date of November 2, 2008. (R. 20). The application was denied at the lower levels of determination. (R. 82–116). A hearing was held before the Administrative Law Judge ("ALJ"). (R. 38–74). The ALJ rendered an unfavorable decision on August 25, 2015. (R. 17–33). The Appeals Council denied Plaintiff's request for review. (R. 1–6). As a result, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner"). (R. 1–6). Judicial review proceeds pursuant to 42 U.S.C. § 405(g) and 28 U.S.C. § 636(c). After careful scrutiny of the record and briefs, for reasons herein explained, the court concludes that the Commissioner's decision is to be AFFIRMED.

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I. NATURE OF THE CASE

Scott seeks judicial review of the Commissioner's decision denying her application for disability insurance benefits. United States District Courts may conduct limited review of such decisions to determine whether they comply with applicable law and are supported by substantial evidence. 42 U.S.C. § 405. The court may affirm, reverse and remand with instructions, or reverse and render a judgment.

## II. STANDARD OF REVIEW

The court's review of the Commissioner's decision is a limited one—the sole function is to determine whether the ALJ's opinion is supported by substantial evidence and whether the proper legal standards were applied. *See Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

"The Social Security Act mandates that 'findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive.'" *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (quoting 42 U.S.C. § 405(g)). Thus, this court must find the Commissioner's decision conclusive if it is supported by substantial evidence. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). Substantial evidence is more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing *Richardson v. Perales,* 402 U.S. 389, 401 (1971)); *Foote*, 67 F.3d at 1560; *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982)).

If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as the finder of fact, and even if the evidence preponderates against the Commissioner's findings. *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (quoting *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)). The court must view the evidence as a whole and consider evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560 (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]," but rather it "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (quoting *Bloodsworth*, 703 F.2d at 1239).

The court also will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dept. of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). There is no presumption that the Commissioner's conclusions of law are valid. *Id.*; *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991) (quoting *MacGregor*, 786 F.2d at 1053).

### III. STATUTORY AND REGULATORY FRAMEWORK

The Social Security Act's general disability insurance benefits program ("DIB") provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. *See* 42 U.S.C.

§ 423(a). The Social Security Act's Supplemental Security Income ("SSI") is a separate and distinct program. SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line. Eligibility for SSI is based upon proof of indigence and disability. *See* 42 U.S.C. §§ 1382(a) & 1382c(a)(3)(A)–(C). However, despite the fact that they are separate programs, the law and regulations governing a claim for DIB and a claim for SSI are identical, so claims for DIB and SSI are treated identically for the purpose of determining whether a claimant is disabled. *Patterson v. Bowen*, 799 F.2d 1455, 1456 n.1 (11th Cir. 1986). Applicants under DIB and SSI must prove "disability" within the meaning of the Social Security Act, which defines disability in virtually identical language for both programs. *See* 42 U.S.C. §§ 423(d), 1382c(a)(3) & 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a) & 416.905(a). A person is entitled to disability benefits when the person is unable to

> [e]ngage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3) & 1382c(a)(3)(D).

      The Commissioner employs a five-step, sequential evaluation process to determine whether a claimant is entitled to benefits. *See* 20 C.F.R. §§ 404.1520 & 416.920.

(1) Is the person presently unemployed?
(2) Is the person's impairment(s) severe?
(3) Does the person's impairment(s) meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
(4) Is the person unable to perform his or her former occupation?
(5) Is the person unable to perform any other work within the economy?

An affirmative answer to any of the questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

The burden of proof rests on a claimant through Step 4. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237–39 (11th Cir. 2004). Claimants establish a *prima facie* case of qualifying for disability benefits once they meet the burden of proof from Step 1 through Step 4. At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id.*

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Id.* at 1238–39. RFC is what the claimant still is able to do despite his impairments and is based on all relevant medical and other evidence. *Id.* It also may contain both exertional and nonexertional limitations. *Id.* at 1242–43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id.* at 1239. To do this, the ALJ either uses the Medical Vocational Guidelines (the "grids") or receives testimony from a vocational expert ("VE"). *Id.* at 1239–40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job

experience. Each factor can independently limit the number of jobs realistically available to an individual. *Id.* at 1240. Combinations of these factors yield a statutorily required finding of "Disabled" or "Not Disabled." *Id.*

## IV. ADMINISTRATIVE FINDINGS AND CONCLUSIONS

Scott was 53 years old at the time she filed her disability application and 55 years old at the time of the ALJ's decision. (R. 33, 75, 86 & 144). She had a college undergraduate degree and a master's degree in social work. (R. 44–45 & 165). She had worked in the past as a social worker and then as a social work consultant for the Alabama Department of Human Resources. (R. 27, 45–50, 69 & 166). Scott retired in 2008 and has not worked since that time. (R. 50–52). She alleged a disability beginning on November 2, 2008 due to multiple sclerosis, permanent numbness in the hands and feet, back, arm and leg numbness, extreme fatigue, skin problems like eczema rashes and infections, balance problems, falling, full body tremors, hand tremors, eye tremors, bladder problems, swallowing and choking problems, muscle weakness, pain, mobility problems, stiffness and memory problems. (R. 75–76, 86, 164). Among other severe impairments the ALJ found "probable multiple sclerosis assessed in June 2013." (R. 22).

After reviewing the evidence and testimony of record, the ALJ found that Scott retained the RFC to perform a reduced range of light work. (R. 26–32). Based on Scott's RFC and on vocational expert testimony, the ALJ found that Scott could return to her past relevant work as a social worker. (R. 32). Therefore, the ALJ concluded that Scott was not disabled. (R. 32–33).

# V. MEDICAL HISTORY

On June 27, 2013, Scott presented to CNC Neurology to see Hassan Kesserwani, M.D. (R. 341). Kesserwani noted that Scott's chief complaints since 2007 included "fatigue, generalized weakness, numbness in arms, legs and balance issues. She had an MRI of the brain, showed multiple plaques, possibly a plaque in the T6 region." (R. 341). He assessed "numbness in arms and legs. Fatigue that remains unexplained. [Multiple sclerosis ("MS")] is certainly a possibility." (R. 342). He recommended "[r]epeat MRI of the brain." (R. 342).

Consistent with Dr. Kesserwani's order, Scott presented to Southeast Alabama Medical Center for imaging of her brain. (R. 336). The history of the MRI reflected "MS, paresthesia in limbs." (R. 336). The findings revealed "[o]n T2 and FLAIR[] there are numerous small high signal foci in the white matter of both hemispheres including several small lesions near the lateral ventricles. Given the history of MS, these most likely represent plaques of demyelinating disease." (R. 336). Similarly, Oligoclonal Banding testing performed at Dale Medical Center using Isoelectric Focusing ("IEF") and immunoblotting methodology revealed the following:

> Four (4) oligoclonal bands were observed in the CSF, which were not detected in the serum sample. Interpretation: Criteria for Positivity: Four (4) or more oligoclonal bands observed only in the CFS have been should to be most consistent with MS using our method.

(R. 339). On September 19, 2013, Scott presented to Dr. Kesserwani where he noted her chief complaints as follows:

1. She has four oligoclonal bands, hence has MS with numbness in arms and legs, fatigue, lack of endurance.

2. She comes in with a list of 10 questions, answered all.
3. She has a lot of eczema and flushing. She is getting treated with steroids.

(R. 337). As for the plan of action, Dr. Kesserwani noted that "[w]e will begin Copaxone. Discussed the role of Copaxone, prognosis of MS." (R. 337). Among other severe impairments, the ALJ found "probable multiple sclerosis assessed in June 2013." (R. 22).

## VI. ISSUES PRESENTED

1. Whether the ALJ properly evaluated Dr. Kesserwani's opinion?

2. Whether the ALJ erred in concluding the Plaintiff's impairments did not meet or equal listing 11.09C?

## VII. ANALYSIS

### A. ALJ's Evaluation of Dr. Kesserwani's Opinion

"[A]bsent 'good cause,' an ALJ is to give the medical opinions of treating physicians 'substantial or considerable weight." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (citations omitted). However, good cause to stray from the treating physician's opinion exists when the: (1) treating physician's opinion is not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Winschel*, 631 F.3d at 1179. If the ALJ does stray from the treating physician's opinion, he "must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error." *Lewis*, 125 F.3d at 1440. (Citations omitted). Moreover, an opinion about whether a plaintiff is disabled is not a medical opinion entitled to significant weight because that issue is dispositive of the case.

*See Hutchinson v. Astrue*, 408 F. App'x 324, 327 (11th Cir. 2011).

The ALJ summarized the opinion of Dr. Kesserwani, one of Scott's treating neurologists, which was contained in a check-the-box Multiple Sclerosis Questionnaire completed on March 5, 2015, as follows:

> Dr. Kesserwani reported the claimant does have *significant, reproducible fatigue of motor function with substantial muscle weakness on repetitive activity, demonstrated on physical examination*, resulting from neurological dysfunction in areas of the central nervous system known to be pathologically involved by the multiple sclerosis process.[2]

(R. 31 & 458). He further noted that Scott first met these criteria four years ago. (R. 31 & 458). However, Dr. Kesserwani provided no explanation for this opinion, nor did he cite to any evidence as support. (R. 458). The ALJ concluded that

> [a]s for the opinion evidence of Dr. Kesserwani, when considering the evidence in its entirety, there are no objective findings or testing which supports his conclusions. Therefore, the undersigned affords this physician's medical source opinion no weight whatsoever.

(R. 32).

The record does contain a diagnosis of MS by Dr. Kesserwani, which the ALJ recognized as one of Scott's severe impairments. (R. 22). However, Dr. Kesserwani pointed to no objective evidence in the record to support his conclusion that Scott had significant fatigue and weakness which was "demonstrated on physical examination." (R. 31 & 458); 20 C.F.R. pt. 404, subpt. p., app. 1 § 11.09C. Indeed, the Eleventh Circuit has held that a physician's diagnosis of MS, standing alone and even where supported by

---

[2] The language contained in the questionnaire is identical to the listing for multiple sclerosis contained at 20 C.F.R. pt. 404, subpt. p., app. 1 § 11.09C (2015).

objective evidence, is insufficient to support a finding of disability. *See Mansfield v. Astrue*, 395 F. App'x 528, 531 (11th Cir. 2010). In the instant action, the ALJ concluded that medical records from the Scott's treating physicians, including Dr. Kesserwani, generally reflected normal examination findings on gait, range of motion, strength, and neurological findings from 2008 through March 2015. (R. 29–31, 245–48, 337, 341–42, 413–14, 425, 428–29, 431–35, 439, 459 & 463).

Based upon an independent review of the record, this court concludes that there are no examination findings or test results substantiating Scott's repeated complaints of numbness, weakness, and fatigue. Rather, the examinations consistently demonstrated that Scott had full, normal muscle strength and nerve conduction in all extremities. (R. 29–31, 245–48, 337, 341–42, 413–14, 425, 428–29, 431–35, 439, 459 & 463). Importantly, the court notes that on February 26, 2015, a month before completing the MS questionnaire, Dr. Kesserwani saw Scott and noted: "still with numbness and fatigue, polysymptomatic, but no deficits. She has MS but not ready for Tecfidera. She says she needs time." (R. 459). His notes also reflect a normal physical exam:

> Appearance: Healthy. Gait: Normal. Can tandem. Romberg is absent. Cranial Nerves: EOMs are full. Visual fields are full. Fundi are normal. Speech: no dysarthria. Motor: No drift.

(R. 459). Thus, the only evidence of Scott's numbness, fatigue, and weakness are her own subjective complaints, and Dr. Kesserwani based his opinion on these complaints. (R. 32 & 458). However, as noted above, Eleventh Circuit law establishes that good cause exists to discount a treating physician's opinion where those findings were based on "subjective reports and he had no objective medical records on which to base his opinion." *Costigan*

*v. Comm'r Soc. Sec. Admin.*, 603 F. App'x 783, 788 (11th Cir. 2015).  Accordingly, the court concludes that the ALJ did not err in discounting Dr. Kesserwani's opinion that Scott was disabled.

**B.     Listing 11.09C**

Scott contends that she meets Listing 11.09C, which covers multiple sclerosis with

> *significant, reproducible fatigue of motor function with substantial muscle weakness on repetitive activity, demonstrated on physical examination,* resulting from neurological dysfunction in areas of the central nervous system known to be pathologically involved by the multiple sclerosis process.

20 C.F.R. pt. 404 subpt. p., app. § 11.09 (2015).  Scott bears the burden of proving that her impairments meet or equal this listing. *See Barron v. Sullivan*, 924 F. 2d 227, 229 (11th Cir. 1991).

As an initial matter, the ALJ incorrectly stated at Step 3 that "[n]o medical expert has concluded that the claimant's impairments meet or equal a listed impairment." (R. 26).  Dr. Kesserwani did, in fact, opine that Scott's impairments met Listing 11.09.  However, on the basis of the conclusion, set forth above, that ALJ had good cause for discounting Dr. Kesserwani's opinion, the court concludes that this is harmless error. *See Sanchez v. Comm'r of Soc. Sec.,* 507 F. App.'x 855, 856 (11th Cir. 2013) ("We have also declined to remand for express findings when doing so would be a 'wasteful corrective exercise' in light of the evidence of record and when no further findings could be made that would alter the ALJ's decision.").  Moreover, the court's independent review of the medical records clearly reveals that Scott had normal muscle strength and normal nerve conduction in all extremities.  (R. 245–48, 337, 341–42, 413–14, 425, 428–29, 431–35,

439, 459 & 463). Thus, Scott has failed to demonstrate that any physical examination or other medical records support her position that she has the necessary fatigue and weakness required to meet Listing 11.09. Accordingly, the court concludes that substantial evidence supports the ALJ's conclusion that Scott is not disabled.

## VIII. CONCLUSION

Pursuant to the findings and conclusions detailed in this Memorandum Opinion, it is ORDERED that the decision of the Commissioner is AFFIRMED.

A separate judgment will be entered herewith.

DONE this 16th day of November, 2018.

GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE